# EXHIBIT A

STATE OF MINNESOTA
COUNTY OF WASHINGTON

DISTRICT COURT
CIVIL DIVISION
TENTH JUDICIAL DISTRICT

**Barbara White,**

     Plaintiff,

v.

**Amazon Web Services, Inc.,**

     Defendants.

Case No. _____

Case Type: Employment

Judge: _____

**SUMMONS**

This Summons is directed to Defendant: **Amazon Web Services, Inc.**

1.    **You are being sued**. The Plaintiff has started a lawsuit against you. The *Complaint* is attached to this *Summons*. Do not throw these papers away. They are official papers that start a lawsuit and affect your legal rights, even if nothing has been filed with the court and even if there is no court file number on this *Summons*.

2.    **You must BOTH reply, in writing, AND get a copy of your reply to the person/business who is suing you within 21 days to protect your rights.** Your reply is called an *Answer*. Getting your reply to the Plaintiff is called <u>service</u>. You must serve a copy of your *Answer or Answer and Counterclaim* (Answer) within 21 days from the date you received the *Summons* and *Complaint*.

     ANSWER: You can find the *Answer* form and instructions on the MN Judicial Branch website at <u>www.mncourts.gov/forms</u> under the "Civil" category. The instructions will explain in detail how to fill out the *Answer* form.

3.    **You must respond to each claim.** The *Answer* is your written response to the Plaintiff's *Complaint*. In your *Answer* you must state whether you agree or disagree with each paragraph of the *Complaint*. If you think the Plaintiff should not be given everything they asked for in the *Complaint*, you must say that in your *Answer*.

4.    SERVICE: **You may lose your case if you do not send a written response to the Plaintiff.** If you do not serve a written *Answer* within 21 days, you may lose this case by default. You will not get to tell your side of the story. If you choose not to respond, the Plaintiff may be awarded everything they asked for in their *Complaint*. If you agree with the claims stated in the *Complaint*, you don't need to respond. A default judgment can then be entered against you for what the Plaintiff asked for in the *Complaint*.

To protect your rights, you must serve a copy of your *Answer* on the person who signed this *Summons* in person or by mail at this address:

> Pamela A. Johson
> Halunen Law
> 1650 IDS Center
> 80 South Eighth Street
> Minneapolis, MN 55402

5.    Carefully read the Instructions (CIV301) for the *Answer* for your next steps.

6.    **Legal Assistance.** You may wish to get legal help from an attorney. If you do not have an attorney and would like legal help:

- Visit www.mncourts.gov/selfhelp and click on the "Legal Advice Clinics" tab to get more information about legal clinics in each Minnesota county.

- Court Administration may have information about places where you can get legal assistance.

**NOTE: Even if you cannot get legal help, you must still serve a written *Answer* to protect your rights or you may lose the case.**

7.    **Alternative Dispute Resolution (ADR).** The parties may agree to or be ordered to participate in an ADR process under Rule 114 of the Minnesota Rules of Practice. You must still serve your written *Answer*, even if you expect to use ADR.

Dated:  August 28, 2024                    **HALUNEN LAW**

*/s/ Pamela A. Johnson*
Pamela A. Johnson (MN #0263667)
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  (612) 605-4098
Facsimile:  (612) 605-4099
p.johnson@halunenlaw.com

*ATTORNEYS FOR PLAINTIFF*

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF WASHINGTON                          TENTH JUDICIAL DISTRICT

---

Barbara White                                        Case Type: Employment
                                                     Court File No.: _____
                        Plaintiff,                   Judge: _____

v.

Amazon Web Services, Inc.,                           **COMPLAINT**
                                                     **(JURY TRIAL DEMAND)**
                        Defendant.

---

## INTRODUCTION

1.      This is a hostile work environment action pursuant to the Minnesota Human Rights

Act ("MHRA"). Defendant Amazon Web Services, Inc. ("AWS") allowed a supervisor to subject

Plaintiff Barbara White ("White") unwelcomed, severe, and pervasive harassment based on her

sex, race, and national origin. Because of her supervisor's harassment, White was constructively

discharged to preserve what remained of her health and reputation within the industry. White now

sues for redress.

## PARTIES

2.      Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully

set forth herein and throughout.

3.      Plaintiff White is a natural person residing in Hugo, Washington County,

Minnesota. White was employed by Defendant AWS from December 2021 until her constructive

discharge on September 11, 2023.

4.      Defendant AWS is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Defendant AWS conducts substantial business within Minnesota.

## JURISDICTION AND VENUE

5.      Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

6.      This Court has subject matter jurisdiction pursuant to Minn. Stat. § 484.01, subd. 1(1).

7.      Plaintiff White has complied with Minn. Stat. § 363A.33, subd. 1(3) as White has commenced this action within 90 days of notifying the Commissioner of the Minnesota Department of Human Rights of her intent to file such action.

8.      This Court has personal jurisdiction over Defendant AWS because it has certain minimum contacts with this State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

9.      Venue in this Court is proper pursuant to Minn. Stat. § 363A.33, subd. 6 because the unlawful discriminatory practice was committed within this District.

## FACTUAL BACKGROUND

10.     Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

11.     White joined Defendant AWS in December 2021 as a Senior Partner Development Manager.

12.     White was excited for the opportunity to leverage her extensive experience in the software industry. She previously worked at Microsoft for over eight years.

2

13.    White demonstrated her value to Defendant AWS from the beginning of her tenure. Within 6 weeks of starting, White co-hosted AWS Partner A ("Partner A") at an Executive Briefing Center in Seattle. Even among other AWS executives, White stood out.

14.    The meeting was a success. White was able to help Partner A improve their readiness to enter the market. One of Partner A's executives sent White's supervisor, Sharjeel Noor ("Noor") a message praising White: "I've been super impressed with [White's] Day 1 approach, and ability to onboard so quickly over the past 60 days. Adding value and understanding our business right out of the gate. Not an easy task given the complexity of our portfolio and depth of industry and audience focus."

15.    Despite her success, Noor, an Indian male, attempted to stifle White's continued success.

16.    In January 2022, Noor instructed White to allocate her time among various AWS partners. However, Noor did not communicate these expectations to the respective account teams. Clear communication of time allocations to managers and account teams is crucial to prevent potential conflicts and ensure successful outcomes.

17.    In March 2022, Noor asked White to submit the names of stakeholders for performance feedback. Although White complied, she did not receive any feedback, and colleagues reported that Noor did not actually request feedback from the stakeholders.

18.    In May 2022, after harsh criticism from Noor for non-substantive issues, White inquired about why she only receives negative feedback. Noor responded that Defendant AWS does not give positive feedback. Despite his comment, Noor often mentored, encouraged, and provided public praise to Indian males on his team.

3

19.    In June 2022, Noor received an email from ISV Sales Manager Mo Das praising White for her work with Partner A: "It is a rare occurrence for this particular customer to be so happy with a member of their account team and as they've had a lot of account team turnover recently, they're very pleased and eager to keep working with [White]."

20.    Instead of sharing this email with White, Noor continued to give her negative feedback.

21.    In the same month, the account team for AWS Partner B ("Partner B") began to express dissatisfaction for not being a higher priority for White. White was confused as she was following the partner time allocation mandated by Noor. Instead of defending her, Noor blamed White for a decision he made.

22.    In July 2022, Noor requested mid-year summaries from his team. He reviewed, met, and provided detailed feedback to every other team member, most of whom were Indian males, but ignored White's summary.

23.    In August 2022, Noor criticized White's time management, advising her to prioritize tasks related to key performance indicators ("KPIs"). When White followed this instruction, Noor failed to support her and instead criticized her efforts.

24.    Noor continued to criticize White while she received praise from outside stakeholders. In the same month, an executive at AWS Partner C ("Partner C") wrote to Flemming Kongsberg ("Kongsberg"), Noor's supervisor, "[White] is having many more [meetings] to evangelize and guide us through the process of growing the relationship. I thought it would be important for you know the quality of player you have on your team and the impact she is having. I am happy to share more details if that's of interest. In the meantime, I will simply say "thank

4

you" for keeping the standard of excellence high and for having a material impact on our business[.]"

25.    In September 2022, White traveled to San Francisco to attend an offsite team meeting. Noor asked all out-of-town team members to extend their trip by an extra day to meet with each of them one-on-one. White changed her flight and hotel itinerary and added a calendar initiation for the one-on-one, which Noor accepted. Noor met with other out-of-town team members but did not meet with White.

26.    In October 2022, White informed Noor that she had booked Rachel Mushahwar Skaff, a prestigious female speaker, for AWS Partner D's sales kickoff event. Noor responded angrily, insisting the invitation be rescinded immediately stating that "the outcome will be a disaster," and demanded that either he or Kongsberg, both male, speak instead.

27.    White could not cancel Ms. Skaff's invitation, and Ms. Skaff ultimately spoke at the event, receiving an enthusiastic reception despite Noor's discriminatory attitude. Noor never acknowledged or praised White's successful speaker choice or her efforts working on the event.

28.    In November 2022, Noor introduced a new team member, an Indian male, to replace a Caucasian male who left the team. The Caucasian male was one of four non-Indian and/or non-male team members who left Noor's team between 2020 and 2023.

29.    In December 2022, the account team for Partner B requested additional resources for 2023, something White had recommended to Noor in the past. Noor continued to demand White deprioritize Partner B, including delaying a 2x2 prioritization matrix for the partner.

30.    Noor's demands of White backfired onto White. The same month, the account team orchestrated a meeting between Partner B's executives and Ruba Borno, an AWS Vice President. The key topic for the meeting was Partner B's get to market strategy, a topic that is White's

5

responsibility. Despite not being invited, White was asked to provide a completed 2x2 prioritization matrix, something she delayed at Noor's demand.

31.    In January 2023, thanks in large part to White's work, AWS was awarded Partner A's 2022 Tech Partner of the Year for Enterprise. Instead of providing positive feedback, Noor became even more critical of White's performance. Noor informed White that unnamed stakeholders were dissatisfied with White and that she was falling short of expectations. White had received no indication from any stakeholder that her work was inadequate.

32.    Noor also informed White that she could not transfer outside his team without his approval and warned her about being "combative" when meeting with Kongsberg.

33.    Noor's criticism surprised White. White had not received any similar criticisms from any of her stakeholders, and within Noor's team of eight, White was responsible for over 36% of the team's customer wins and almost 31% of the team's annual recurring revenue from purchase orders. Even expanded to employees under Kongsberg's supervision, which included Noor's team, White accounted for over 22% of the department's customer wins and over 24% of the department's annual recurring revenue from purchase orders.

34.    In February 2023, despite higher performance on KPIs than any of her peers and continuous praise from both internal and external partners, Noor placed White in the PIVOT program for alleged underperformance. (PIVOT is a training program for employees who are underperforming.) Noor cited minor issues to substantiate putting White into the PIVOT program, including the December 2022 failure that was a result of Noor's directives.

35.    For such minor issues, White's inclusion in the PIVOT program came with major consequences. Noor required White to choose between an improvement plan or leaving the company with a six-week severance. White had seven days to make her decision.

36.    White felt trapped in a lose-lose situation. She did not believe the improvement plan was achievable as Noor was purposefully documenting alleged performance deficiencies to justify her termination or force her out of the company. Alternatively, she could not go to Human Resources to report Noor because he had a history of retaliatory behavior.  A colleague told White that one of Noor's subordinates—a woman—reported him to Human Resources for discriminatory conduct. After the report, Noor screamed at the subordinate and intensified his discriminatory conduct.

37.    Noor's discriminatory conduct took a significant toll on White's physical and mental health. In December 2022, White visited her doctor and reported sleeplessness, migraine headaches, and stomach issues. Through February 2023, her symptoms worsened.

38.    White's doctor ultimately diagnosed her with Generalized Anxiety Disorder with her high anxiety causing physical symptoms such as stomach pain, racing heart, and insomnia. White's doctor recommended medical leave and therapy to address the anxiety, depression, and low self-esteem caused by Noor's discriminatory conduct.

39.    On February 23, 2023, White informed Defendant AWS that she wished to accept the improvement plan but, following the advice of her doctor, take a medical leave of absence.

40.    Defendant AWS accepted White's medical leave request through September 8, 2023.

41.    On March 8, 2023, White, knowing that her job was at risk and fearing continued abuse upon her return, reported Noor to Human Resources for discriminatory behavior. Defendant AWS did not substantiate White's report, despite evidence from a former colleague who corroborated White's experiences and even broke down during her interview with the investigator.

42.     In September 2023, White was set to return to work for Defendant AWS. However, her doctor's return to work authorization came with a restriction: White could not work under Noor.

43.     Defendant AWS denied White's ability to transfer out of Noor's team and required her to work under her abuser.

44.     On September 11, 2023, White resigned from her position.

45.     The discriminatory treatment and hostile work environment orchestrated by Noor caused White significant emotional distress, physical injury, economic damages, and potential long-term impacts on her career prospects and professional reputation.

46.     White's attempts to address the discriminatory treatment internally were met with resistance, lack of support, and an unwillingness to protect her from harm.

47.     The ongoing harassment and discriminatory treatment left White with no viable option but to take medical leave, and the continuous threat to her employment constituted a constructive discharge as she was unable to return to a hostile and abusive work environment without risking further harm to her health and career.

48.     White's constructive discharge is further evidenced by her doctor's recommendation for medical leave and subsequent short-term disability leave was necessary to ameliorate the severe impact on her mental and physical health.

49.     White's professional reputation within the tight-knit software industry community has been damaged by Noor's baseless criticisms and Defendant AWS's inaction, limiting her future employment opportunities.

8

## CAUSES OF ACTION

### COUNT I
### MHRA SEX HARASSMENT
### MINN STAT. § 363A.01, *ET SEQ.*

50.     Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

51.     The MHRA prohibits employers from discriminating against a person with respect to the terms, conditions, or privileges of employment because of a person's sex. The term "discriminate" includes harassment.

52.     White is a woman.

53.     Noor subjected White to unwelcomed harassment based on her sex by being overly critical of her performance, including documenting minor performance deficiencies, failing to provide White with the necessary resources and feedback to do her job effectively, and placing White on a sham improvement plan that was unachievable.

54.     There is a causal nexus between Noor's harassment and White's sex as Noor did not subject his male subordinates to harassment. Additionally, Noor harassed other women on his team because of their sex.

55.     Noor's harassment was severe as Noor's conduct jeopardized White's reputation within the industry and took a significant toll on White's physical and mental health.

56.     Noor's harassment was pervasive as Noor subjected White to discriminatory harassment consistently for all fourteen months White worked on Noor's team.

57.     Noor's harassment created a work environment that White found to be abusive.

58.     A reasonable person would find that Noor's harassment created a work environment for White that was abusive.

9

59.    Noor's harassment had reached the level where White's health and career were at risk. If White had continued to work at AWS, her life or livelihood would be at stake. Any reasonable person in White's position would have felt compelled to resign.

60.    Defendant AWS is liable for Noor's harassing conduct because AWS empowered Noor, as White's supervisor, to take tangible employment actions against White.

61.    Noor did, in fact, take a tangible employment action against White by placing her on an improvement plan. White became ineligible to make an internal transfer within the company when Noor placed White on the improvement plan.

62.    As a direct and proximate result of Defendant AWS's conduct in violation of the MHRA, White has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

### COUNT II
### MHRA RACE HARASSMENT
### MINN STAT. § 363A.01, *ET SEQ.*

63.    Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

64.    The MHRA prohibits employers from discriminating against a person with respect to the terms, conditions, or privileges of employment because of a person's race. The term "discriminate" includes harassment.

65.    White is Caucasian.

66.    Noor subjected White to unwelcomed harassment based on her race by being overly critical of her performance, including documenting minor performance deficiencies, failing to

provide White with the necessary resources and feedback to do her job effectively, and placing White on a sham improvement plan that was unachievable.

67.    There is a causal nexus between Noor's harassment and White's race as Noor did not subject his Indian subordinates to harassment. Additionally, Noor harassed other non-Indians on his team because of their race.

68.    Noor's harassment was severe as Noor's conduct jeopardized White's reputation within the industry and took a significant toll on White's physical and mental health.

69.    Noor's harassment was pervasive as Noor subjected White to discriminatory harassment consistently for all fourteen months White worked on Noor's team.

70.    Noor's harassment created a work environment that White found to be abusive.

71.    A reasonable person would find that Noor's harassment created a work environment for White that was abusive.

72.    Noor's harassment had reached the level where White's health and career were at risk. If White had continued to work at AWS, her life or livelihood would be at stake. Any reasonable person in White's position would have felt compelled to resign.

73.    Defendant AWS is liable for Noor's harassing conduct because AWS empowered Noor, as White's supervisor, to take tangible employment actions against White.

74.    Noor did in fact take a tangible employment action against White by placing her on an improvement plan. White became ineligible to make an internal transfer within the company when Noor placed White on the improvement plan.

75.    As a direct and proximate result of Defendant AWS's conduct in violation of the MHRA, White has suffered and will continue to suffer loss of wages and benefits, has endured and

will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT II
## MHRA NATIONAL ORIGIN HARASSMENT
## MINN STAT. § 363A.01, *ET SEQ.*

76.    Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

77.    The MHRA prohibits employers from discriminating against a person with respect to the terms, conditions, or privileges of employment because of a person's national origin. The term "discriminate" includes harassment.

78.    White is American.

79.    Noor subjected White to unwelcomed harassment based on her national origin by being overly critical of her performance, including documenting minor performance deficiencies, failing to provide White with the necessary resources and feedback to do her job effectively, and placing White on a sham improvement plan that was unachievable.

80.    There is a causal nexus between Noor's harassment and White's national origin as Noor did not subject his Indian subordinates to harassment. Additionally, Noor harassed other non-Indians on his team because of their national origin.

81.    Noor's harassment was severe as Noor's conduct jeopardized White's reputation within the industry and took a significant toll on White's physical and mental health.

82.    Noor's harassment was pervasive as Noor subjected White to discriminatory harassment consistently for all fourteen months White worked on Noor's team.

83.    Noor's harassment created a work environment that White found to be abusive.

84. A reasonable person would find that Noor's harassment created a work environment for White that was abusive.

85. Noor's harassment had reached the level where White's health and career were at risk. If White had continued to work at AWS, her life or livelihood would be at stake. Any reasonable person in White's position would have felt compelled to resign.

86. Defendant AWS is liable for Noor's harassing conduct because AWS empowered Noor, as White's supervisor, to take tangible employment actions against White.

87. Noor did in fact take a tangible employment action against White by placing her on an improvement plan. White became ineligible to make an internal transfer within the company when Noor placed White on the improvement plan.

88. As a direct and proximate result of Defendant AWS's conduct in violation of the MHRA, White has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendant as follows:

A. An order granting Plaintiff judgment against Defendant;

B. An order granting Plaintiff compensatory damages, including for mental anguish or suffering, in such amount as the jury may determine;

C. An order granting Plaintiff treble and punitive damages, in such amount as the jury may determine;

D. An order granting pre- and post-judgment interest.

E.  An order for Defendant to pay Plaintiff's costs, interest, and attorneys' fees; and

F.  An order for Defendant to pay any and all further relief available, such as any relief this Court may consider equitable or appropriate.

***Plaintiff demands a jury trial.***

HALUNEN LAW

Dated: August 28, 2024

*/s/ Pamela Johnson*
Pamela Johnson (MN #0263667)
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 548-5286
Facsimile: (612) 605-4099
p.johnson@halunenlaw.com

**ATTORNEY FOR PLAINTIFF**

14

## **ACKNOWLEDGEMENT**

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.211, sanctions, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.


Dated: August 28, 2024                    /s/ Pamela Johnson
                                          Pamela Johnson

## Business Record Details »

Minnesota Business Name
# Amazon Web Services, Inc.

**Business Type**
Business Corporation (Foreign)

**File Number**
1201111800024

**Filing Date**
12/16/2020

**Renewal Due Date**
12/31/2024

**Registered Agent(s)**
Corporation Service Company

**Home Business Name**
Amazon Web Services, Inc.

**MN Statute**
303

**Home Jurisdiction**
Delaware

**Status**
Active / In Good Standing

**Registered Office Address**
2345 Rice Street
Suite 230
Roseville, MN 55113
USA

**Chief Executive Officer**
ADAM SELIPSKY
410 TERRY AVENUE NORTH
SEATTLE, WA 98109
USA

Filing History

# Filing History

**Select the item(s) you would like to order:** Order Selected Copies