UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Barbara White,

Plaintiff,

v.

Amazon Web Services, Inc.,

Defendant.

Court File No. 24-cv-3693 KMM/EMB

**DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER (ECF DOC. 50) OR, IN THE ALTERNATIVE, PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Federal Rule of Civil Procedure 72 and Local Rule 72.2, Defendant Amazon Web Services, Inc. submits its Objections to the Magistrate Judge's Order granting Plaintiff Barbara White's untimely and futile Motion for Leave to Amend her Complaint [ECF Doc. 50]. AWS asks this Court (1) to reverse the Order to the extent it allows White to add a new reprisal claim;[1] or, alternatively, (2) enter judgment on the pleadings in favor of Defendant as to White's reprisal claim in the Amended Complaint under Federal Rule of Civil Procedure 12(c).

In October 2024, the parties agreed to December 1, 2024 deadline to move to amend the pleadings. [ECF Doc. 8]. This deadline was appropriate because counsel from Halunen Law had represented White for almost two years as of October 2024, White had resigned from her AWS employment and filed her Charge more than a year prior, and there was no expectation or indication White would amend her Complaint. That White had no intention of amending her Complaint is demonstrated by the fact that, even after she agreed to a

[1] AWS does not object to the portion of the Order dismissing White's race and national origin discrimination claims. [EFC Doc. 50, pp. 6 n.3, 18].

December 1, 2024 deadline, White waited two months after discovery opened – and three weeks after the deadline to move to amend the pleadings expired – to serve any discovery requests and did not take any depositions until approximately eight months into discovery. In June 2025, White's lead counsel—within the same law firm—changed, which led to an attempt to change case theory. A new attorney, however, is not an adequate basis for amending a Complaint nearly three years after the alleged events occurred, more than two years after White resigned and initiated litigation, and nine months after Judge Cowan Wright's deadline for doing so.

At the same time that White asserts she could not possibly have brought a reprisal action until the June 2025 depositions, she claims she alleged a reprisal claim in her Charge before filing this lawsuit, and thus admits she had sufficient knowledge to plead a reprisal claim when she filed her Complaint in this action. White's lack of diligence has put the parties and the Court into a position where, if the Court does not reject the Magistrate Judge's Order, resolution will likely be pushed even further away, particularly now that the parties are evaluating another extension to provide AWS an opportunity to investigate White's post-resignation custody and use of AWS's laptop.

In addition to reversing the Order because the underlying motion was untimely and without cause for an extension, this Court should deny White's Motion to Amend to add a reprisal claim as futile. White fails to state a plausible claim for reprisal because she does not allege a protected activity, an adverse action, or a causal connection, and the claim is time-barred.

## FACTUAL AND PROCEDURAL BACKGROUND

White retained Halunen in this matter in approximately February 2023, filed her Charge with the MDHR in September 2023, and filed her Complaint with this Court on August 28, 2024. [ECF Doc. 36, Ex. E]; [ECF Doc. 2-1]. On October 23, 2024, the Parties commenced discovery and submitted a Joint Rule 26(f) Report that included a deadline of December 1, 2024 to move to amend the pleadings, accounting for the preexisting longevity of the case, which had been filed with the MDHR more than a year prior and in which Halunen had been involved for almost two years. [ECF Doc. 8]. Magistrate Judge Cowan Wright then issued a Scheduling Order setting the deadline for amending the pleadings as December 2, 2024. [ECF Doc. 10].

White waited two months until December 20, 2024 to serve her first set of written discovery. [ECF Doc. 32, p. 4]. When White still had not taken any depositions in June 2025 (after unilaterally canceling the March 2025 deposition of an AWS manager), the parties agreed to a Stipulation to Amend the Scheduling Order, which the Court approved on June 18, 2025. [ECF Docs. 24, 28]. That Stipulation contains no extension to the pleadings amendment deadline. [ECF Doc. 28]. White took three depositions at the end of June and beginning of July 2025. [ECF Doc. 40, ¶¶ 3-4].

## ARGUMENT

### I. STANDARD OF REVIEW

#### A. <u>Review of a Magistrate Judge's Findings under Fed. R. Civ. P. 16(b)(4).</u>

A Magistrate Judge's Order on a non-dispositive motion may be modified or set aside when it is clearly erroneous or contrary to the law. Fed. R. Civ. P. 72(a); *see also* 28

U.S.C. § 636(b)(1). The Court reviews the portion of the Order that addresses AWS's futility argument *de novo*. L.R. 72.2(a)(3)(B).

Because the deadline to amend the pleadings had passed, White must show good cause. *See* Fed. R. Civ. P. 16(b)(4). The primary measure of good cause under Rule 16(b)(4) is the movant's "diligence in attempting to meet the [scheduling] order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-717 (8th Cir. 2008). Because White did not exercise diligence in seeking her amendment, this Court should reject the Order outright on this basis. *See Sherman*, 532 F.3d at 716; *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir. 1987); *Schenk v. Chavis*, 259 F. App'x 905, 907 (8th Cir. 2008) (upholding denial of plaintiff's motion to amend his Complaint after time established in court's Scheduling Order had passed and plaintiff did not have good cause for filing untimely motion).

Because no good cause exists to extend the deadline, AWS need not show prejudice, though AWS would be prejudiced[2] if White were allowed to amend her Complaint to add alleged claims that occurred several years ago. *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 522 (D. Minn. 2018); *Cardiovascular Sys. Inc. v. Cardio Flow,*

[2] *Mays v. Sherburne Cnty. Jail*, No. 20-cv-506(PAM/KMM), 2021 WL 5755425, at *3 (D. Minn. Dec. 3, 2021) (disallowing amendment after the deadline to amend has lapsed because "allowing amendment at this late stage would introduce new claims and issues into the litigation at a very late stage, resulting in undue delay and unfair prejudice to the Defendants"). At this point, all written discovery and depositions is complete, and AWS will need to consider whether it needs to reopen its discovery processes to probe these new claims. Even with White's offer to cover the costs of re-opening her deposition, it will cost AWS a substantial amount in attorney's fees to prepare for such a deposition, as well as to draft and issue supplementary written discovery, if needed.

*Inc.*, No. 0:18-cv-1253-SRN-KMM, 2020 WL 949117, at *1 (D. Minn. Feb. 27, 2020) ("Indeed, prejudice to the nonmoving party is rarely considered by the Courts unless diligence has first been demonstrated").

**B. Review under Fed. R. Civ. P. 12(c).**

If this Court allows White's amendment, it should enter judgment on the pleadings in favor of Defendant as to the reprisal claim because White does not state a plausible claim for relief.[3] *St. Paul Ramsey Cty. Med. Ctr. v. Pennington Cty. S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988) (the same standard applies to Rule 12(c) and 12(b)(6) motions).

## II. THE COURT SHOULD OVERRULE THE MAGISTRATE'S ORDER GRANTING WHITE'S UNTIMELY MOTION FOR LEAVE TO AMEND HER COMPLAINT.

**A. No Good Cause Exists to Allow White to Amend Her Complaint.**

White lacks good cause for her months-late filing. The Magistrate Judge's Order excuses White's extreme tardiness based on White's purported discovery of new information supporting amendment during a deposition in June 2025. [ECF Doc. 50, pp. 7-9]. However, this Court has held that, to succeed in demonstrating diligence, the movant "must show the Court what it did to obtain the information it needed within the deadline." *Cardiovascular Sys.*, 2020 WL 949117, at *2 (disallowing amendment made several months after the amendment deadline); *Hellquist v. Progressive Preferred Ins. Co.*, No.

---

[3] The Magistrate Judge has allowed White to amend her Complaint approximately ten months into discovery – after all productions and depositions had been completed – and to base the allegations in her Amended Complaint on those facts. Because the Magistrate relied on facts/evidence outside of the Amended Complaint in allowing the same, this is not a true 12(b)(6) motion; instead, AWS must necessarily be allowed to rely on evidence in the discovery record used to support the request for the amendment, as White was allowed to do, to support its request for dismissal of White's reprisal claim.

16-cv-779-RHK-KMM, 2017 WL 10456415, at *1 (D. Minn. June 30, 2017) ("When a motion is filed after an applicable deadline in a court's scheduling order the movant must demonstrate good cause for the untimely motion in accordance with Fed. R. Civ. P. 16(b)(4). This requires the movant to show that despite the exercise of reasonable diligence, the motion could not have been filed by the deadline") (denying motion to amend made after deadline for the same expired). White did not engage in discovery until several weeks after the deadline lapsed, and thus made *no* efforts to obtain *any* information by the agreed-upon and ordered deadline.

Simply put, White impeded her own ability to timely obtain information by delaying her written discovery process by two months, and then by waiting almost a year after filing her Complaint to take her first deposition. Then, White entered into the Stipulation to amend the Scheduling Order in June 2025 without including a new deadline for pleading amendments. White's actions reflect the opposite of diligence. No good cause exists to extend the Scheduling Order deadline imposed by this Court for amendments to the pleadings.

### B. White Knew the Allegedly New Information Well in Advance of the Deadline to Amend Her Pleadings.

Again, because no good cause exists to allow White to extend a long-expired deadline and amend her Complaint because White did not demonstrate diligence in pursuing amendment, the analysis should end there. "Whether certain facts are known to a plaintiff moving to amend its complaint by the deadline to amend 'is not the *sine qua non* under Rule 16. Instead, the focus under Rule 16(b) is on the diligence with which the

moving party attempted to comply with the scheduling order's deadlines.'" *Cardiovascular Sys.*, 2020 WL 949117, at *2. Notwithstanding this principle, the Order accepts, with minimal discussion, White's representation that her proposed amendments are based on "information uncovered in the late-June depositions." [ECF Doc. 50, pp. 8-9]. But White's representation does not comport with the actual allegations in her Proposed Amended Complaint or the materials submitted in support of her Motion for Leave to amend. White even admits (repeatedly) in her Motion for Leave that she was aware of a reprisal claim when she filed her 2023 Charge of Discrimination: she asserts that "the text of her [administrative] charge contained allegations of a reprisal claim" sufficient to state a claim. [ECF Doc. 32, pp. 24-25 ("In short, in submitting her Charge, White alleged a prima facie case for reprisal.")]. In addition to her lack of diligence in pursuing amendment, because White admits that she could have asserted the same allegations at the beginning of her lawsuit (well before December 2, 2024), she does not have good cause to extend the Scheduling Order deadline to file her amended Complaint nine months after that deadline passed. *See IBEW Local 98 Pension Fund*, 326 F.R.D. at 522-23 (plaintiff did not have good cause to modify the scheduling order to allow for more time to amend complaint where he had information on which amendment was based at outset of the litigation). If parties were permitted to amend their Complaints any and every time they learned a new fact to support a potential claim they purport to already have known about for several years, discovery would never end, deadlines would become fictions, and lawsuits would never resolve.

White's proposed amendments include a reference to an email she herself sent to her supervisor in September 2022, expressing her perception that women were underrepresented in the technology-based workforce, and that she was placed on Focus in December 2022. [ECF Doc. 34, ¶ 25]. These facts purportedly support her new reprisal claim. But they are not new information. White was aware of those events when she filed her September 2023 Charge, filed her August 2024 Complaint, and when she agreed to a December 1, 2024 deadline to amend the pleadings. [*Id.*, ¶¶ 25-27]. Because the Magistrate Judge's Order permits White to amend her Complaint to include a reprisal claim at this late date, even though she has known about the basis for that claim since at least 2022 or 2023, the Order is clearly erroneous on this point and the Court should reject it and deny leave to amend to include a reprisal claim now.

Regarding White's proposed disparate treatment theory, her "new" allegations also include information she had before filing her 2023 Charge. According to White, after sending her September 2022 email, she and her supervisor agreed to discuss it one-on-one, but they did not. [*Id.*, ¶ 25]. Instead, she avers, her supervisor requested assistance to interfere with White's work efforts. [*Id.*]. Thus, the record reflects that White knew about the expected one-on-one discussion long before she even filed her Charge in 2023 and similarly knew that the "strategic collaboration agreement" did not occur at the time it did not proceed. [*Id.*]. She may not have known all the specific details about her supervisor's involvement, but insofar as she claims these incidents "led directly to adverse action against [her], including but not limited to her constructive discharge," she was aware of the events and could have included them when drafting her 2023 Charge and 2024 Complaint

in this action. Because the events underlying White's new claim are not new information to White, she cannot use them to file an untimely amended pleading. *See Reichel Foods, Inc. v. Proseal America, Inc.,* No. 0:19-cv-02604-ECT-KMM, 2021 WL 1712546, at *3 (D. Minn. Apr. 30, 2021) (denying motion to extend deadline for amending pleadings because plaintiff had the information that formed basis of proposed amendment "[l]ong before the deadline for amendment"); *Satanic Temple v. City of Belle Plaine*, No. 19-cv-0336 (WMW/JFD), 2021 WL 4199369, at *10-11 (D. Minn. Sept. 15, 2021) (same).

**C. <u>White's Proposed Reprisal Claim is Futile</u>.**

Alternatively, the Court should deny White's Motion to include a reprisal claim as futile. To state a claim for reprisal under the MHRA, White must allege: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action. *Lopez Prater v. Trs. of Hamline Univ. of Minn.*, 693 F.Supp.3d 1009, 1027 (D. Minn. 2023). White has not done so.

**1. White Does Not Plausibly Allege Protected Activity.**

White's September 2022 email, which White now references to support her Motion and incorporates into her proposed Amended Complaint, expresses only her perception of a "lack of representation of women in general" in the technology industry and in leadership roles at AWS. [ECF Doc. 34, ¶ 25; ECF Doc. 35, Ex. X]. White specifically exempts her own supervisor from this perception, praising him as "a leader who makes it comfortable for me to share these thoughts and help me understand what AWS and our own organization's ethos and action plans are on this topic." [*Id.*]. When White testified about

the email at her deposition, she described the email as an attempt to "have an open discussion about [advancement opportunities, particularly for women] because of all the policies that Amazon had about supporting women in leadership and whatnot." [ECF Doc. 40, Ex. A].

That email does not implicate any practice forbidden by the MHRA. Minn. Stat. § 363A.15. Nor was it a complaint that White felt she was being discriminated against, but rather was White's attempt to "get out ahead of" what she perceived as a future concern. The MHRA does not protect discussions of hypothetical discriminatory conduct that are not actual complaints of purportedly existing discrimination. *Lopez Prater*, 693 F.Supp.3d at 1028 (teacher did not complain of discrimination when she told her supervisor that if she had not shown images of a religious figure, it "would have been" discriminatory, and so she did not engage in protected activity under MHRA).

**2. White Did Not Sustain an Adverse Employment Action.**

Under the MHRA, an adverse employment action occurs when an employer engages in conduct that would dissuade a reasonable employee from making a discrimination claim. *Ewald v. Royal Norwegian Embassy*, 2 F. Supp. 3d 1101, 1120 (D. Minn. 2014) (citations omitted). White claims her supervisor took adverse action against her by placing her on an improvement plan, and that while on the plan she "became ineligible to make an internal transfer." [ECF Doc. 34, ¶ 60]. She also avers she had a "return to work authorization" under which her doctor restricted her from working under her current supervisor, and that AWS denied her the ability to "transfer out" of his team. [*Id.*, ¶¶ 41-42]. As a baseline, employers do not have to reassign employees away from any supervisor or coworker who

may cause stress or conflict. *Schwarzkopf v. Brunswick Corp.*, 833 F. Supp. 2d 1106, 1123 (D. Minn. 2011) (citations omitted). More importantly, White does *not* allege in her Amended Complaint that she ever applied for a transfer and was denied because she was on an improvement plan. White also alleges that she voluntarily resigned. [ECF Doc. 51, ¶ 43]. Accordingly, she has failed to identify an adverse employment action.

**3. No Causal Connection Exists Between White's September 2022 Email and Her Resignation in September 2023.**

White has also "pled herself out of court" regarding the third element of a reprisal claim. White sent her email in September 2022. [ECF Doc. 34, ¶ 25]. She resigned on September 11, 2023. [ECF Doc. 34, ¶ 43]. As a matter of law, no temporal connection exists between White's September 2022 email and her resignation a year later in September 2023. *Lissick v. Anderson Corp.*, 996 F.3d 876, 885-86 (8th Cir. 2021) (citations omitted) (finding that even if temporal proximity could establish reprisal claim, period of three or four months between employee's complaint and his termination was too attenuated to create an inference of causation); *Mell v. Minn. State Agr. Soc'y*, 557 F. Supp. 3d 902, 923 (D. Minn. 2021) (employee did not state plausible claim for reprisal under MHRA where complaint alleged six-month gap between protected activity and termination).

This is especially true where, as here, the allegedly adverse action (*i.e.*, discussion or correction of performance issues began months before the allegedly protected act. White sent the email that she alleges constituted protected activity on September 21, 2022, [ECF Doc. 35-2]. Two months before that, however, on July 26, 2022, White's supervisor informed her that she needed to improve her performance, noting that White's written work

product did not follow AWS's writing style and was "too verbose." [ECF Doc. 41]. White acknowledged this feedback, assuring her supervisor that he could "expect improved quality from [White's] next submissions" and thanked him for his "direct feedback." *Id.* A few weeks later, on August 10, 2022, White's supervisor emailed his own manager to inform him that White "is headed to Focus" (*i.e.*, a performance improvement plan) and explained that White was struggling with her role, prioritization, and timely completion of tasks and deliverables. *Id.* Because the coaching of White's job performance predates her September 2022 email by several months, there is no way in which White's performance improvement plan was generated by her September 2022 email, and her reprisal claim fails.

### 4. White's Reprisal Claim Is Time-Barred.

White's reprisal claim is also time-barred. White now tries to add this new reprisal claim two and half years after the last possible overt act, *i.e.*, the last day she worked at AWS (February 16, 2023), and more than two years before she voluntarily resigned through counsel on September 11, 2023. [ECF Doc. 34, ¶ 25, 43]. The statute of limitations for MHRA claims is one year. Minn. Stat. § 363A.28 subd. 1, 3; *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005). White filed her lawsuit on August 28, 2024, and thus White may only bring claims for alleged events that happened on or after August 28, 2023. The only relevant event that occurred in that timeframe was White's voluntary resignation, and a claim relating to any alleged event that occurred before August 28, 2023 is time-barred. For this additional reason, White's reprisal claim is futile, and the Court should deny her motion for leave to amend her Complaint to include it.

## III. ALTERNATIVELY, AWS MOVES FOR JUDGMENT ON THE PLEADINGS AS TO WHITE'S REPRISAL CLAIM.

For the same reasons it is futile for White to amend her Complaint to include a reprisal claim, as set forth in Section II, *supra*, the Court should enter judgment on the pleadings in favor of Defendant as to White's reprisal claim, even if it accepts the Magistrate Judge's Order. Fed. R. Civ. P. 12(c).

Dated: October 24, 2025

*/s/ Marko J. Mrkonich*

Marko J. Mrkonich, Bar No. 125660
mmrkonich@littler.com
Grace Jacobson, Bar No. 0403618
gjacobson@littler.com

LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000
Facsimile: 612.630.9626

Attorneys for Defendant

4927-4150-6418.9 / 114766.1219