UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No. 24-CV-3693-KMM/EMB

**Barbara White**,

Plaintiff,

v.

**Amazon Web Services, Inc.**,

Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S OBJECTIONS AND PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

Magistrate Judge Bullard granted Plaintiff Barbara White's motion for leave to amend her complaint against Defendant Amazon Web Services, Inc. ("AWS"). Dkt. 50. The Order is thorough, grounded in the record, and faithful to governing law. Judge Bullard found that White was diligent in seeking amendment, that AWS suffered no prejudice from the amendment, and that the Amended Complaint states a plausible reprisal claim.

Repackaging arguments already raised and rejected, AWS asks the Court to substitute its judgment for that of the Magistrate's, in contravention of Fed R. Civ. P. 72. Similarly, AWS's "alternative" motion for judgment on the pleadings is the same futility argument in different clothes.

Because Judge Bullard's determinations on diligence and prejudice were not clearly erroneous or contrary to law, and because the Amended Complaint survives Rule 12(b)(6)/12(c) review, the Court should overrule AWS's Objections and deny its alternative motion for judgment on the pleadings.

## II. LEGAL ANALYSIS

### A. Judge Bullard's Fed. R. Civ. P 16(b)(4) determinations are not clearly erroneous or contrary to law.

The Court may modify or set aside a magistrate judge's order on non-dispositive matters only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The standard is "extremely deferential," and reversal is appropriate only when the Court is left with the "definite and firm conviction that a mistake has been committed," or the order misapplies controlling law. Taqueria El Primo LLC v. Illinois Farmers Ins. Co., 636 F. Supp. 3d 985, 988 (D. Minn. 2022).

When a party moves to amend a pleading after a scheduling order's deadline, courts consider whether there is "good cause" to modify scheduling order under Rule 16(b)(4). Shank v. Carleton Coll., 329 F.R.D. 610, 613 (D. Minn. 2019) (citing Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008). A movant's diligence in attempting to comply with a scheduling order is the

primary measure when assessing good cause. Id. at 613–614. If the court is satisfied that the movant was diligent, it will also generally consider possible prejudice to the nonmovant. Id. at 614.

**i. Diligence**

Judge Bullard determined White was diligent in seeking amended because "[a]fter uncovering [] additional information, [White] moved quickly to inform AWS of her desire to amend, and she promptly contacted the Court to schedule a hearing. Dkt. 50 at 6. One way a movant can show diligence is how quickly she moves to amend after discovering the claim to be added. Compare Portz v. St. Cloud State Univ., No. 16-CV-1115-JRT/LIB, 2017 WL 3332220, at *4 (D. Minn. Aug. 4, 2017) (good cause when party moved to amend two weeks after discovery revealed new viable claims) with Lollie v. Johnson, 159 F. Supp. 3d 945, 966 (D. Minn. 2016) (no good cause where party moved to amend nearly four months later) (citing Sherman, 532 F.3d at 717–18).

The Order details how White's depositions of her supervisors, Noor and Kongsberg, discovered evidence that provided the necessary and unknown causal link between her protected conduct and adverse employment actions. Dkt. 50 at 8–9. Testimony and documents produced subject to subpoena revealed that

days after White emailed Noor and complained of gender discrimination, Noor enlisted a peer to make unsolicited complaints about White to Noor's boss. Dkt. 50 at 3, 12; 36-3 at 231:11–232:2; 35-1 at 2. That feedback provided the basis for placing White into AWS's performance improvement programs (Focus and Pivot), ultimately causing her constructive discharge. Dkt. 50 at 8–9; 32 at 8–11. After gathering this evidence, White quickly moved to amend. Dkt. 50 at 6.

AWS argues that White lacked diligence because she knew the basis for her reprisal claim prior to the amendment deadline and that Judge Bullard "accept[ed], with minimal discussion," facts to the contrary. Dkt. 56 at 7. In so arguing, AWS conflates White's own good-faith belief that she suffered retaliation with sufficient evidentiary support for pleading a cause of action in court. Dkt. 50 at 8–9. AWS also ignores that Judge Bullard explained the distinction: though White knew of her protected conduct and AWS's adverse employment actions, she "needed a more concrete factual foundation to file a reprisal claim . . . in federal court" id. at 8, and the June depositions "offer[ed] some factual support for a causal link." Id. at 9; see Dkt. 47 at 35:15–36:6. With that factual support, which had been previously unavailable to her, White promptly and diligently moved to amend. Dkt. 50 at 6, 7 –8; see, e.g., Portz, 2017

WL 3332220, at *4; TCS Holdings, Inc. v. OnVoy, Inc., No. 07-CV-1200-DWF/AJB, 2008 WL 11347408, at *2 (D. Minn. May 16, 2008).

AWS also contends Judge Bullard erred in finding that it was impractical for White to have sought the requisite factual support prior to the amendment deadline. Compare Dkt. 50 at 6–7 with Dkt. 56 at 5 (citing Cardiovascular Sys., Inc. v. Cardio Flow, Inc., No. 18-CV-1253-SRN/KMM, 2020 WL 949117, at *2 (D. Minn. Feb. 27, 2020) [Cardiovascular I], aff'd, No. 18-CV-1253-SRN/KMM, 2020 WL 1900118 (D. Minn. Apr. 17, 2020) [Cardiovascular II]). However, unlike the plaintiff in that case, Judge Bullard found that White explained why she could not have obtained the necessary discovery prior to the amendment deadline even if she had served discovery requests on the day the Scheduling Order was issued. Dkt. 50 at 6–7; 47 at 25:5–12; 43 at 9–11. Cf. Cardiovascular II, 2020 WL 1900118, at *3 ("CSI… failed to 'explain why it could not have gotten the necessary discovery for pleading a tortious interference claim in some other manner prior to the deadline.'") (quoting Cardiovascular I, 2020 WL 1900118 at *2).

Judge Bullard found that White "litigated her case diligently, serving written discovery, following up on document production, and timely noticing,

rescheduling, and taking depositions." Dkt. 50 at 8. Because that holding is not contrary to law and is subject to extreme deference, Taqueria El Primo, 636 F. Supp. 3d 985, 988, the Court should overrule AWS's objection on diligence.

**ii. Prejudice**

Considering the record AWS helped create, Judge Bullard found that AWS would not be prejudiced by White amending the Complaint. Dkt. 50 at 9–10. AWS objects that it is prejudiced because it must "consider" reopening discovery or taking White's deposition, "if needed." Dkt. 56 at 4 n.2. AWS did not—and cannot—articulate what additional discovery is needed because there is none. White's amendment "significantly narrows" the case by clarifying gender discrimination and removing race and national-origin claims, reducing—not expanding—issues for discovery and trial. See Dkt. 50 at 10. White's reprisal claim is substantially related to her gender discrimination claim. Dkt. 50 at 9; see Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981) (no prejudice where facts underlying original claim were substantially similar to the claim added by amendment). In any event, AWS remained free to re-depose White, at her expense, and to continue with additional discovery through the close of fact discovery. Dkt. 50 at 9–10.

Judge Bullard's analysis under Fed. R. Civ. P. 16(b)(4) reflects no clear error or misapplication of law. AWS's objection should therefore be overruled.

### B. White's Amended Complaint is not futile, and AWS's alternative Rule 12(c) motion fails.

A district court reviews a magistrate judge's futility determination de novo. D. Minn. LR 72.2(a)(3)(B). A proposed amendment is not futile if it would survive a motion to dismiss under the Rule 12(b)(6) standard. Benner v. Saint Paul Pub. Sch., I.S.D. #625, 407 F. Supp. 3d 819, 826 (D. Minn. 2019) (citing Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010). Motions under Rule 12(b)(6) and Rule 12(c) are governed by the same standard. Ashley Cnty. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains enough facts to state a claim for relief that is plausible on its face. Hanson v. M & I Marshall & Ilsley Bank, 737 F. Supp. 2d 988, 990 (D. Minn. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When evaluating a claim under Rule 12(b)(6), courts accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014). Courts ordinarily do not consider matters outside the

pleadings, including evidence in opposition to the pleading. HealthPartners, Inc. v. Am. Guarantee & Liab. Ins. Co., 587 F. Supp. 3d 874, 878 (D. Minn. 2022).

Under the MHRA, employers are prohibited from engaging in reprisals against an employee who opposes a practice forbidden by the statute. Minn. Stat. § 363A.15(1). "Reprisals" include, but are not limited to, any form of harassment, intimidation, or retaliation. Minn. Stat. § 363A.15. A plaintiff can establish a prima facie case of reprisal by demonstrating that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action. Carter v. Dayton Rogers Mfg. Co., 543 F. Supp. 2d 1026, 1034 (D. Minn. 2008).

Judge Bullard applied the correct legal standard. She declined to convert the Rule 15 futility analysis into a summary-judgment exercise and properly limited her review to the Amended Complaint and documents it embraces. Dkt. 50 at 11; 47 at 15:20–21. On objection, AWS again asks the Court to inappropriately weigh evidence and resolve fact disputes.[1]

**i. Protected Activity**

---

[1] AWS argues that because Judge Bullard considered the record for Rule 16(b)(4) analysis, the Court should do so for reviewing futility. Dkt. 56 at 5 n.3. Such a request has no legal basis and directly contradicts the Rule 12(b)(6) standard. See HealthPartners, 587 F. Supp. 3d 874, 878.

White alleges that she complained about disparate treatment of women and gender discrimination during her employment at AWS. Dkt. 51 at ¶ 25. Those allegations plausibly constitute opposition to sex-based employment practices prohibited by the MHRA. See Jeseritz v. Potter, 282 F.3d 542, 548 (8th Cir. 2002) ("Protected activity is an informal or formal complaint about . . . an employer's practice or act [] if the employee reasonably believes such an act to be in violation of the [MHRA]."); Minn. Stat. § 363A.08, subd. 2(3) (unlawful to discriminate against a person because of sex with respect to "hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.")

Though White alleges that she complained both verbally and in writing, Dkt. 51 at ¶ 25, AWS zeroes in on her September 2022 email to Noor and contends that it was not protected activity. Dkt. 56 at 9–10 (arguing that White merely observed a lack of representation of women in general and did not oppose an unlawful practice). If the Court is to examine the email, it plainly shows White complaining about disparate treatment of women and juxtaposing the lack of women in leadership positions with AWS's supposed goal of promoting women:

> "I am struggling with seeing it in practice. This has me examining my own career trajectory here and it also impacts my talk track with others who might be interested in joining AWS."

Dkt. 35-2. White reported that she was concerned about her own career at AWS in light of that disparate treatment.[2] Id. She also pushed back on being expected to recruit women into a discriminatory environment. Id. Further, White asked Noor to help her understand what AWS was doing to correct the disparate treatment of women. Id. While AWS argues that the email cannot reasonably be read as such, all reasonable inferences must be drawn in White's favor. Gorog, 760 F.3d at 792. Similarly, AWS's attempt to quibble with White's deposition testimony about the email, Dkt. 56 at 9–10, is improper on Rule 12(b)(6) review. HealthPartners, 587 F. Supp. 3d at 879. White's Amended Complaint sufficiently alleges protected conduct under the MHRA and AWS's objection to the contrary should be overruled.

### ii. Adverse Employment Actions

---

[2] White worked for AWS in Minnesota and was undisputedly covered by the MHRA. Minn. Stat. §§ 363A.08, subd. 2(3); 363A.03, subd. 15; 363A.02, subd. 1.

For MHRA reprisal claims, an adverse employment action includes any action that would dissuade a reasonable employee from engaging in protected conduct. Ewald v. Royal Norwegian Embassy, 902 F. Supp. 2d 1208, 1217 (D. Minn. 2012) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Such adverse actions can be cumulative, encompassing repeated acts of intimidation, harassment, or retaliation. Finch v. Abbott Nw. Hosp., No. A20-0494, 2021 WL 162383, at *10 (Minn. Ct. App. Jan. 19, 2021) (citing Moore v. City of New Brighton, 932 N.W.2d 317, 328 (Minn. Ct. App. 2019)).

White alleges several adverse employment actions by AWS, each of which, individually and in the aggregate, would dissuade a reasonable employee from opposing discrimination: (1) AWS and Noor blocked her from transferring to another department within AWS, Dkt. 51 at ¶¶ 31, 42; (2) Noor worked with a peer to solicit complaints about White and to block her from successfully securing a strategic collaboration agreement with an important partner, Id. at ¶ 25; (3) Noor's harassment and retaliatory targeting of White—with the concealed help of a peer—directly led to White being forced onto a performance improvement plan and constructively discharged. Id. at ¶¶ 25, 33, 43, 46–47; Dkt. 50 at 13–14 ("Plaintiff claims her proposed amended complaint includes several

other adverse actions, none of which AWS addressed." (internal citation omitted)).

AWS's argument that White did not allege that she applied for and was denied a transfer, Dkt. 56 at 11, misses the point. Because AWS placed White in its improvement plan program, it altered the terms of her employment by putting an additional condition on her transfers. This condition was "disadvantageous" to White—she was stuck with a supervisor who was setting her up to fail. Cf. Muldrow v. City of St. Louis, Missouri, 601 U.S. 346, 354 (2024) (holding that employment actions that brought about some "disadvantageous" change in an employment term or condition is adverse). Placing an additional requirement on transfers for someone who opposed MHRA violations and not doing the same for other AWS-employees would dissuade a reasonable employee from opposing discrimination. See Ewald, 902 F. Supp. 2d at 1217.

AWS characterizes White's exit as a voluntary resignation. Dkt. 56 at 11. Putting aside its attempt to draw an inference *against* White, AWS ignores all her allegations explaining her termination. See Dkt. 50 at 13 ("AWS does not argue the factual allegations in the proposed amended complaint are insufficient to allege constructive discharge[.]"). She alleges that Noor purposely stifled her

performance, Dkt. 51 at ¶ 15, placed conditions on her ability to internally transfer teams, Id. at ¶ 31, and gave her the option between resigning or being placed on an unachievable improvement plan program. Id. at ¶¶ 33–35. Under the MHRA, when an employer creates objectively intolerable working conditions with the intention of forcing an employee to quit, the employee's resignation is treated as an adverse employment action. Henry v. Indep. Sch. Dist. #625, 988 N.W.2d 868, 884 (Minn. 2023). White's allegations showcase unfavorable treatment based on her gender and protected activity such that "the axe was about to fall" on her employment. Dkt. 51 at ¶ 40, 45–47; see Henry, at 886. White plausibly alleges constructive discharge along with a myriad of other adverse employment actions.

**iii. Causal Connection**

Evidence that gives rise to an inference of a retaliatory motive on the part of the employer is sufficient to establish a causal connection. Hite v. Vermeer Mfg. Co., 446 F.3d 858, 866 (8th Cir. 2006). Such evidence can include an employer taking escalating adverse and retaliatory action shortly after she engaged in protected activity. Id.

White alleges that within eight days of her email, Noor asked another manager to "give Flemming some feedback on [White]," initiating the negative reviews that culminated in AWS and Noor placing her on Focus and Pivot, culminating in her constructive discharge. Dkt. 51 at ¶ 25. That direct sequence of retaliatory conduct easily satisfies the plausibility threshold. See Hite, 446 F.3d at 866 (a pattern of adverse actions after protected activity can satisfy the causation requirement and the temporal "gap" between protected activity and adverse actions can be shortened by escalating adverse and retaliatory actions).

In its objection, AWS shifts to a Rule 56 analysis by introducing emails between White and her supervisors to try and cast doubt on the causal link between her protected conduct and AWS's adverse employment actions. Dkt. 56 at 12 (citing Dkts. 41, 41-1). Analysis of futility and Rule 12(c) motions prohibit considering matters outside the pleadings, including evidence in opposition to the Amended Complaint. HealthPartners, 587 F. Supp. 3d at 879. Regardless, deposition testimony undermines the notion that performance issues were present prior to her protected conduct, as she had been voicing concerns about AWS's practices early on in her employment. Dkt. 34 at ¶ 25; 44-1 at 187:9–19. White will argue at summary judgment that her email only accelerated Noor's

retaliation against her. Thus, the Court should disregard AWS's argument regarding the emails and find that her Amended Complaint sufficiently alleges a causal connection.

**iv. Timeliness**

Under the MHRA, reprisal claims must be brought as a civil action or filed in a charge with the MDHR within one year after the occurrence of the practice. Minn. Stat. § 363A.28, subd. 3(a). If a party withdraws her MDHR charge, she may commence an action based on her charge within ninety days. Minn. Stat. § 363A.33, subd. 1(3).

Because the MHRA is remedial in nature, courts should construe MDHR charges liberally to further its remedial purposes. See Henke v. Allina Health Sys., 698 F. Supp. 2d 1115, 1123 (D. Minn. 2010) (citing cases related to EEOC charges). In other words, subsequently filed lawsuits need not mirror an administrative charge, allowing claims not expressly alleged in a charge to be properly exhausted. See id. For a claim not expressly alleged in a charge to be properly exhausted, the question is whether the entire text of the charge, and not simply the boxes checked or the claims alleged therein, provides sufficient notice

of the claim. Id. at 1124 (citing Russell v. TG Missouri Corp., 340 F.3d 735, 748 (8th Cir. 2003)).

White signed and submitted her MDHR charge on September 6, 2023. Dkt. 36-5, at 1, 24. She withdrew her charge and commenced this action within 90 days of withdrawal. Dkt. 51 ¶ 7. Any claim that arose after September 6, 2022 and is alleged with sufficient notice of its existence in her MDHR charge is timely. Additionally, any claim that arose a year before White commenced this action is also timely. See Fed. R. Civ. P. 15(c)(1)(B).

White's MDHR charge sufficiently alleged her MHRA reprisal claim. Though she did not mark the box for reprisal, the text of her charge contained allegations of a reprisal claim. White alleged that she feared continued discrimination and retaliation from Noor if she were to return from her medical leave. See Dkt. 36-5, at 3 ("I fear that when I return, my supervisor will continue to discriminate against or retaliate against me."). By alleging that she feared continued retaliation, White necessarily alleged that retaliation had already occurred at the time of her charge. Dkt. 50 at 15–18. White also alleged harassment, which is a form of reprisal. Minn. Stat. 363A.15.

When White submitted her Charge, she included a copy of the protected conduct in which she opposed AWS's disparate treatment of women, attaching the September 21, 2022 email to Noor. Dkt. 36-5 at 22–23. She further alleged that shortly after her email to Noor, he engaged in additional harassment. Id. at 11–12. In short, when submitting her Charge, White alleged a prima facie case for reprisal. Dkt. 50 at 15–18.

AWS is hard-pressed to claim lack of notice for the reprisal claim. As it has conceded, such claims are not time-barred if it is included in the charge of discrimination. Dkt. 50 at 15–16 (quoting Dkt. 47 at 43:13–16. Furthermore, AWS's Answer specifically defended against a reprisal claim. Dkt. 4, at ¶¶ 95–96; 47 at 35:22–36:3.

Moreover, even if White's MDHR charge did not contain her reprisal claim, her constructive discharge occurred less than a year before she commenced this suit. White alleges that she was constructively discharged in September 2023, and she commenced this lawsuit on August 28, 2024. Thus, at minimum, White's constructive discharge based on reprisal is timely.

Accordingly, because White plausibly alleges an MHRA reprisal claim and her claim is timely, the Court should overrule AWS's objection on futility and deny its alternative motion for judgment on the pleadings.

## III. CONCLUSION

For the reasons set forth herein, the Court should overrule AWS's objections and deny its alternative motions.

Dated: November 7, 2025

**HALUNEN LAW**

/s/ Christopher Empson
Joshua Newville, MN #395221
Pamela Johnson, MN #263667
Christopher Empson, MN #506110
80 S 8th St, 1650 IDS Center
Minneapolis, Minnesota 55402
Telephone: 612-900-2563
newville@halunenlaw.com
p.johnson@halunenlaw.com
empson@halunenlaw.com
***Attorneys for Barbara White***